UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CHARLES A. BENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00491-JRS-DLP |
| ) | |
| NORVIL ARNOLD, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment**

Plaintiff Charles Benson, an Indiana inmate, alleges in this civil rights lawsuit that when he was housed at Wabash Valley Correctional Facility ("WVCF"), defendant Officer Arnold retaliated against him for filing grievances by trashing his cell, taking away hygiene products, papers, and writing materials, and tearing his knee brace. Mr. Benson also alleges that Officer Arnold violated his equal protection rights by treating him more harshly than other inmates. Finally, Mr. Benson alleges that defendant Officer Adams subjected him to excessive force and failed to intervene when Officer Arnold trashed his cell. The defendants move for summary judgment on these claims. For the following reasons, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can

also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Facts

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. Mr. Benson's Conduct Report and Grievance

At all times relevant to his complaint, Mr. Benson was housed in the Special Confinement Unit ("SCU") at WVCF. Dkt. 1, dkt. 9. On August 14, 2019, Mr. Benson received a conduct report, authored by Officer Arnold, alleging that Mr. Benson interfered with his cuff port in violation of prison disciplinary rules. Dkt. 69-1 at 2-3; dkt. 69-2 at 2. Mr. Benson filed an informal grievance about the conduct report, asserting that the report was fabricated. Dkt. 69-1 at 3. The response to Mr. Benson's grievance stated that the evidence gathered in relation to his conduct report supported the charge. *Id.* Mr. Benson then filed a formal grievance on August 30, 2019. *Id.* at 2. Officer Arnold did not respond to Mr. Benson's grievance and states that he was not aware that Mr. Benson had filed any grievances regarding this conduct report. Dkt. 69-2 at 3-4.

### B. Cell Search on October 14, 2019

On October 14, 2019, at approximately 8:06 a.m., Officer Adams escorted Mr. Benson from his cell to the shower cell on his range in the SCU. Dkt. 64-1 at 8:06:50 (video of SCU). After Mr. Benson was secured in the shower cell, officers were walking the range outside of the shower cell. *Id.* Mr. Benson told Officer Arnold that he was going to sue him if he went into Mr. Benson's room, that he was going to beat the allegedly fabricated conduct report, and that he had already filed a grievance. Dkt. 72 ¶ 4.

Mr. Benson was in the shower cell for approximately 20 minutes. While Mr. Benson was in the shower, several members of correctional staff, including Officer Arnold, conducted searches of cells on Mr. Benson's range in the SCU. Dkt. 64-1; Dkt. 69-2 at 1. Officer Arnold explains that these searches were part of a routine search for contraband and to clean out trash. Dkt. 73-1 ¶ 5. Many cells were searched that day, as routine searches in the WVCF SCU are generally conducted while inmates are out of their cells. *Id.* ¶ 6. Officer Arnold entered Mr. Benson's cell at

3

approximately 8:15 a.m. and began searching the cell. Dkt. 64-1 at 8:15:40. Several items were thrown out of Mr. Benson's cell during the search. *Id.* at 8:18:19. Officer Arnold exited Mr. Benson's cell at approximately 8:20 a.m. *Id.* at 8:20:05.

Officer Adams removed Mr. Benson from the shower at approximately 8:26 a.m. *Id.* at 8:26:44. Officer Adams placed his hand on Mr. Benson's arm. *Id.* at 8:26:54-8:27:33. Mr. Benson objected, Officer Adams removed his hand, and Mr. Benson was escorted to his cell. *Id.* Four officers escorted Mr. Benson back to his cell. *Id.* at 8:26:05. Mr. Benson's mechanical restraints were removed by another officer after he was secured in his cell. *Id.* at 8:27:40.

Mr. Benson asserts that during the search, his property was destroyed or thrown away and his knee brace was torn. *See* dkt. 1 at 4; dkt. 69-3 at 2; dkt. 72 ¶ 9. A picture taken of Mr. Benson's property after the search shows that Mr. Benson's knee brace was torn. Dkt. 69-3 at 2. In contrast, another inmate on the SCU that day whose cell was searched states that his property was not destroyed or thrown away. Dkt. 72-1 at 5 ¶ 5.

### III. Discussion

The defendants seek summary judgment on Mr. Benson's retaliation, equal protection, and excessive force claims.

**A. Retaliation**

Mr. Benson claims that Officer Arnold retaliated against him when Officer Arnold searched and trashed Mr. Benson's cell. "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

4

Here, Officer Arnold does not dispute that Mr. Benson has satisfied the first element of his retaliation claim. His grievance was protected by the First Amendment. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7rh Cir. 2015) ("filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim"). Officer Arnold also does not suggest that Mr. Benson did not suffer a deprivation that is likely to deter First Amendment activity when his cell was searched, and his property was thrown away and damaged.

Officer Arnold does argue that Mr. Benson cannot show that his grievance was a motivating factor in the alleged retaliatory action. Officer Arnold asserts that he did not know about the grievance and therefore could not have taken any retaliatory action because of it. But there is a dispute of fact on this point. Officer Arnold testifies that he did not know that Mr. Benson had filed any grievances against him. Dkt. 69-1 at 3-4. On the other hand, Mr. Benson asserts that, when he was in the shower cell, he told Officer Arnold that he filed a grievance against him and that he was going to sue him. Dkt. 72 ¶ 4. Resolving this dispute in the light most favorable to Mr. Benson as the non-movant, therefore, the Court assumes that Mr. Benson told Officer Arnold about his grievance.

Because there is evidence that Mr. Benson told Officer Arnold shortly before the cell search at issue that he had filed a grievance against him, there is evidence to raise an inference that Mr. Benson's grievance was a motivating factor in Officer Arnold's actions. *Cf. Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("Mays presented a chronology of events from which retaliation could be inferred; almost immediately after making his protected complaint about strip searches, the guards subjected him to a much more onerous search."). Therefore, "[t]he burden then shifts to the defendant[] to show that [he] would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013) (citation omitted). "[T]he ultimate question

5

is whether events would have transpired differently absent the retaliatory motive." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Officer Arnold seeks to rebut the presumption of retaliatory animus by arguing that his search of Mr. Benson's cell was part of a routine search for contraband and to clean out trash. Dkt. 73-1 ¶ 5. Officer Arnold explains that Mr. Benson's cell was one of many searched that day, as routine cell searches in the WVCF SCU are generally conducted while inmates are out of their cells. *Id.* ¶ 6. But Mr. Benson has presented testimony from another inmate on the SCU that day whose cell was searched and who states that his property was not destroyed or thrown away. Dkt. 72-1 at 5 ¶ 5. Further, Mr. Benson asserts not simply that his cell was searched, but that his property was destroyed or thrown away and his knee brace was torn. *See* dkt. 1 at 4; dkt. 69-3 at 2; dkt. 72 ¶ 9. Viewing this evidence in a light most favorable to Mr. Benson, a reasonable jury might conclude that Officer Arnold destroyed Mr. Benson's property while he was in Mr. Benson's cell and that the grievance motivated Officer Arnold to take that action.. Therefore, Officer Arnold is not entitled to summary judgment on Mr. Benson's retaliation claim.

### B. Equal Protection

Mr. Benson also alleges that Officer Arnold violated his equal protection rights. In support of the motion for summary judgment on this claim, Officer Arnold argues that there is no evidence that his actions were based on Mr. Benson's race. But as the Court explained in the Order screening the complaint, Mr. Benson does not allege that the harsher treatment was the result of his membership in a protected class. Dkt. 9 at 2. Thus, the Court treated the claim as a "class-of-one" equal protection claim. *Id*. To succeed on such a claim Mr. Benson will have to establish that (1) he "was intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment." *Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d

914, 920 (7th Cir. 2019) (internal quotation omitted). Because Officer Arnold did not address Mr. Benson's "class-of-one" claim, his motion for summary judgment on the equal protection claim is denied.[1]

### C. Excessive Force

Mr. Benson also asserts that Officer Adams used excessive force against him. The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar de minimis force unless the force is "'of a sort repugnant to the conscience of mankind.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)). Even if the force applied is not de minimis, it remains permissible if used "'in a good-faith effort to maintain or restore discipline.'" *McCottrell v. White*, 933 F.3d 651, 664 (7th Cir. 2019) (quoting *Wilkins*, 559 U.S. at 37). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider a number of factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response."

*McCottrell*, 933 F.3d at 663; *see Whitley v. Albers*, 475 U.S. 312, 321 (1986).

No reasonable jury could find that Officer Adams's use of force against Mr. Benson was anything other than de minimis. The video shows Officer Adams directing Mr. Benson out of the shower and holding his arm. Dkt. 64-1 at 8:26:50-59. The video does not show Officer Adams

---

[1] A reasonable jury might find that Officer Arnold trashed Mr. Benson's cell and damaged his property in retaliation for Mr. Benson's grievance. But Mr. Benson may plead alternative theories of liability regarding these claims, even though he will not be able to obtain multiple recoveries.

grabbing Mr. Benson's arm harshly or otherwise pulling or pushing Mr. Benson inappropriately. And even if a reasonable jury could find that Officer Adams's actions were more than de minimis, Mr. Benson cannot prevail under the *Whitley* factors. It does not appear from the video that Officer Adams used any more force than necessary to direct Mr. Benson out of the shower. Mr. Benson does not appear from the video to have been injured and he does not claim any injuries in his response to the motion for summary judgment. *Cf. Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004) (finding force was de minimis where inmate experienced "discomfort and sore wrists"). In short, any reasonable jury would find that Officer Adams's actions were not malicious or sadistic and instead that he held Mr. Benson's arm in a good-faith effort to maintain discipline. Officer Adams is therefore entitled to summary judgment on Mr. Benson's excessive force claim.

## IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment, dkt. [69], is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Mr. Benson's excessive force claims against Officer Adams and is in all other respects **DENIED**. Mr. Benson's retaliation and equal protection claims against Officer Arnold shall proceed to settlement and trial, if one is necessary. Mr. Benson also claimed in his complaint that Officer Adams failed to intervene in the alleged retaliatory search. Officer Adams did not address this claim in the motion for summary judgment, and this claim shall also proceed.

If Mr. Benson wishes to request that the Court attempt to recruit counsel to represent him for the remainder of the case, he should file a motion for assistance with recruiting counsel by **February 17, 2022**. The **clerk shall include** a form motion for assistance with recruiting counsel with Mr. Benson's copy of this Order.

**IT IS SO ORDERED.**

Date: 2/8/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHARLES A. BENSON
202702
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov